UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| FROME WYE LIMITED,<br><br>        Plaintiff,<br><br>        v.<br><br>HOSIE RICE LLP, et al.,<br><br>        Defendants. | Case No. 23-cv-06153-EMC<br><br>**ORDER DENYING DEFENDANTS' MOTION FOR TEMPORARY RESTRAINING ORDER**<br><br>Docket No. 21 |

    Plaintiff Frome Wye Limited has filed suit against Defendants Hosie Rice LLP, Spencer Hosie, and Diane Rice. Hosie Rice is a law firm, and Mr. Hosie and Ms. Rice (*i.e.*, the two individual defendants) partners in the firm. In its complaint, Plaintiff alleges that, in 2018, it entered into an agreement with all three Defendants under which the law firm obtained funding from Plaintiff (*e.g.*, to pay monthly operating expenses). *See* Compl. ¶¶ 11-12. Under the funding agreement, Plaintiff was granted "a continuing, first priority, perfected security interest in the Firm Collateral . . . and all proceeds thereof." Agmt. ¶ 13.6. In addition, Plaintiff "was granted a continuing, third priority, perfected security interest in the 'Partner Collateral' and all proceeds thereof." Compl. ¶ 14; *see also* Agmt. ¶ 13.6. "Partner Collateral" was defined as "'all present and future right, title and interest of either Partner (or both Partners)" in certain real property located in Belvedere, California. Compl. ¶ 14; *see also* Agmt. ¶ 1.23. Defendants failed to make repayments under the funding agreement, and currently owe Plaintiff more than $1.8 million (as reflected in an arbitration award confirmed by a Delaware district court). *See* Compl. ¶¶ 20, 25-27.

    It now appears that Mr. Hosie and Ms. Rice are about to sell the real property at issue, *i.e.*,

the Partner Collateral. Based on the most recent evidence of record, it appears that a nonjudicial foreclosure sale (initiated by Perkins Coie) is set for December 14, 2023. *See* Hosie Decl., Ex. C (Letter at 3). It also appears that, to avoid nonjudicial foreclosure, the individual defendants marketed the property for sale and found a buyer, with the sale price being more than $7.7 million. *See* Hosie Decl., Ex. D (Estimated Seller's Statement). It is not clear whether that contract sale went forward; it appears to have been set at one time on December 1, 2023, and then later on December 8, 2023.

Previously, Plaintiffs moved for a temporary restraining order ("TRO") – not to stop the contract sale but rather to ensure that some of the sale proceeds would be set aside so that Plaintiff could recover the $1.8 million owed. The title company/escrow agent did not account for any lien held by Plaintiff in its planned disbursement of funds. *See* Hosie Decl., Ex. D (indicating that funds would be used to pay off a first mortgage loan to Chase (more than $546,000), a second mortgage loan to Perkins Coie (more than $1.9 million), a state tax lien (more than $319,000), and a federal tax lien (more than $4.1 million)). Plaintiff acknowledged that there were two mortgage loans senior to its interest but asserted that its interest was senior to the liens of the state and federal taxing authorities.

This Court denied Plaintiff's motion for a TRO based on its failure to establish a likelihood of irreparable harm. *See* Docket No. 17 (order, filed on December 1, 2023). On December 7, 2023, Defendants filed their own motion for a TRO. This is the motion now pending before the Court. Defendants ask the Court: (1) to enjoin Plaintiff from enforcing its lien (on the basis that it is inchoate) and (2) to enjoin Plaintiff "from threatening third-parties, *e.g.*, the listing brokers and title company, to enforce its lien to disrupt the sale." Prop. Order at 1.

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. NRDC*, 555 U.S. 7, 20 (2008); *see also Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (noting the same). In the Ninth Circuit, however, a court may employ

an alternative serious questions standard, also known as the sliding

> scale variant of the *Winter* standard. Under that formulation, serious questions going to the merits and a balance of hardships that tips sharply towards the [moving party] can support issuance of a preliminary injunction, so long as the [moving party] also show[s] that there is a likelihood of irreparable injury and that the injunction is in the public interest.

*Fraihat v. United States Immigration & Customs Enf't*, 16 F.4th 613, 635 (9th Cir. 2021) (internal quotation marks omitted).

Based on the parties' submissions in the instant case, Defendants' motion for a TRO is denied. As to the first form of relief requested, "'[i]t is not usually proper to grant the moving party the full relief to which he might be entitled if successful at the conclusion of a trial' in a preliminary injunction," and therefore in a TRO as well. *Toomey v. Arizona*, No. 94-9310, 2021 U.S. Dist. LEXIS 36944, *17-18 (D. Ariz. Feb. 26, 2021).

As to the second form relief requested, it is unwarranted because Defendants have failed to show a likelihood of irreparable injury. Defendants assert that, "[a]bsent a sale [of the real property], [the individual defendants] will suffer irreparable harm" because "they cannot clear their debts," which total in the millions. Mot. at 10. As is clear from this statement, Defendants' position is predicated on Plaintiff's conduct threatening to disrupt the sale. However, Defendants have failed to provide competent evidence that Plaintiff's conduct threatens to disrupt the sale. For example, the fact that Plaintiff asked the broker/listing agent for the contact information of the escrow agent and provided a copy of the complaint to the broker/listing agent, *see* Hosie Decl., Ex. E (emails), can hardly be construed as a threat, particularly when she was not named as a defendant. As for Plaintiff's letter to the title company/escrow agent, it simply indicated that the title company could be exposed to liability *post-sale* if, post-sale, it distributed payments in favor of the taxing authorities over Frome Wye. *See* Hosie Decl., Ex. B (letter). There is no indication that the title company has since asked to disengage from the sale proceedings such that the sale would not be able to go forward. (Indeed, the title company could avoid liability through an interpleader.) Finally, there is no indication that the buyer of the real property would back out of the sale simply because there is a dispute among others as to how the sale proceeds will be distributed after the sale is completed.

The Court therefore denies the motion for a TRO. The Court notes that, as before, it is not

opining here on the merits of the parties' dispute as to whether the taxing authorities' lien is junior to Plaintiff's. However, it does appear that, at the very least, the federal tax liens (totaling more than $4.1 million) were not recorded until January 2020 and October 2020 which was after Plaintiff had already disbursed funds to Defendants (pursuant to the funding agreement) in April 2019. *See* Friel Decl. ¶ 8 (testifying that a drawdown of $800,000 was made between January and April 2019); Pl.'s RJN, Exs. 2-3 (notices of federal tax liens, dated January 2020 and October 2020).

This order disposes of Docket No. 21.

**IT IS SO ORDERED**.

Dated: December 12, 2023

_____
EDWARD M. CHEN
United States District Judge